The Flick Inc. v. Commissioner.
Flick, Inc. v. Commissioner
Docket No. 1525-67.
United States Tax Court
T.C. Memo 1968-159; 1968 Tax Ct. Memo LEXIS 139; 27 T.C.M. (CCH) 776; T.C.M. (RIA) 68159; July 25, 1968. Filed *139 Sidney Meyers, for the petitioner. Richard J. Mandell, for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined a deficiency in income tax against petitioner for its fiscal year ending October 31, 1963 in the amount of $3,983.18 plus an addition for fraud in the amount of $1,991.59 pursuant to section 6653(b), I.R.C. 1954. Three adjustments made by the Commissioner are presently in controversy: (1) the disallowance of a deduction for salaries and wages to the extent of $9,831; (2) the disallowance of an item of $2,500 included in "purchases" which were reflected in cost of goods sold; and (3) additional income in the amount of $240 in respect of unreported 777 juke box commissions. Petitioner also contests the addition for fraud, which appears to be founded upon the first adjustment noted above. A stipulation of facts filed by the parties and other facts stipulated by them at the trial are incorporated herein by reference. Petitioner is a New York corporation. Its principal place of business at all times relevant has been in New York City, and it filed its income tax return for its fiscal *140 year ending October 31, 1963 with the district director of internal revenue, Manhattan District, New York. George Zelonka was about 45 years old in 1962. He had only a grammar school education. He had held a number of jobs, and had been engaged in various businesses, including the roofing business and the usedcar business. In 1962 he was engaged in the contracting business which he did not like. Petitioner was organized in 1962 to enable him to enter an entirely different kind of business. From the time of its organization in the fall of 1962 to the present time petitioner has operated a restaurant and ice cream parlor at 1074 Second Avenue, New York, New York. Although George Zelonka's parents were the sole stockholders of petitioner, George has been the manager and the only person actually directing its affairs and interested in its success. His parents palyed no part in the conduct of the business. 1. Wages and Salaries. Petitioner's employees included a manager (George), an assistant manager, cooks, soda fountain clerks and busboys. All of these were male. In addition, it employed a number of waitresses, generally girls who were attending college, studying music, ballet or *141 theatre, or otherwise preparing themselves for a career, and who were working for petitioner on a part-time basis. On petitioner's first income tax return, for the fiscal year ending October 31, 1963, there was deducted an item of $4,935.15 for wages and salaries. This amount included $9,831 allegedly paid to the waitresses. The Commissioner disallowed the latter amount as a deduction. Although the testimony was contradictory, we are satisfied on the evidence that at least as to some of the waitresses, if not all, petitioner paid no wages whatever, the arrangement being that they were to work for tips alone plus two meals a day. We so find as a fact. We need not review the evidence. It fully establishes a pattern of falsified books reflecting payment of wages to waitresses that were not in fact paid. Petitioner has failed to prove by credible evidence that it in fact paid any part of the $9,831 wages to the waitresses, and we sustain the Commissioner's determination as to this adjustment. We further find that he has established by clear and convincing evidence that at least part of the underpayment resulting from this item was due to fraud. 2. Purchases. About several months after *142 petitioner commenced operations it determined to purchase the building in which it conducted its business. To assist it in making a down payment its supplier of ice cream, J B Ice Cream Corp., made a loan of $2,500 to petitioner. A loan agreement was entered into between them on March 25, 1963, providing for the repayment of that loan by adding $1.35 to the sum to be paid by petitioner for each drum of ice cream purchased from J & B until the loan should be repaid. The loan was thus in fact repaid during the tax year, and the price of ice cream thereafter was adjusted downward accordingly. The petitioner treated the gross "price" thus paid for the ice cream as part of its cost of goods sold, but the Commissioner eliminated this $2,500 from that item. We think that he was clearly correct in so doing. Although the $2,500 may have been in form part of the cost of ice cream purchased, it was in fact merely the repayment of a loan and must be treated as such. 3. Juke box commission. A juke box was placed in petitioner's establishment with an arrangement that the owner would pay petitioner 40 percent of the amounts received therefrom. No such amounts were reported on petitioner's return. *143 The Commissioner determined that petitioner received $20 a month in respect of the juke box and added $240 to petitioner's income for the taxable year. George admitted that the "commissions" from the juke box were about $15 or $20 a month. We find no error in the Commissioner's determination as to this issue. Decision will be entered for the respondent. 778